UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LELA McGEE, | Case No. 2:20-cv-00345-KJD-DJA |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE** |
| v. | |
| TARGET CORPORATION; DOES I-V; and ROE CORPORATIONS II-V, | |
| Defendants. | |

Before the Court is Defendant's Motion *in Limine* to Exclude Plaintiff's Expert Stan V. Smith from Testifying (ECF #30). Plaintiff responded in opposition (ECF #32). Defendant filed a Motion for Leave to File Reply to Plaintiff's Response (ECF #36) and a Motion to Amend/Correct the Motion for Leave to File Reply (ECF #37).

I.   Factual and Procedural Background

Plaintiff Lela McGee ("McGee") initiated this personal injury action against Defendant Target Corporation ("Target") on January 15, 2020 in Nevada state court. (ECF #1). Target then removed the action to this Court on February 18, 2020. Id. McGee alleges she was injured when she tripped on a piece of metal that was bolted to the floor of Target's store. (ECF #22, at 3). During discovery, McGee designated Dr. Jason Garber ("Dr. Garber") to offer medical opinions regarding her injuries and medical treatment, and Stan V. Smith ("Smith"), an economist, to offer opinions regarding McGee's past and future wage loss. Id.

Smith submitted his expert report that McGee has $217,954 in lost wages and benefits, $501,993 for loss of household and family services, between $897,432–$1,794,894 for reduction in value of life, and $599,733 for loss of society or relationship. (ECF #30, at 4). Target filed the instant motion, arguing that Smith has no data to support his opinions, his findings are not based

on fact, methodology, or scientific reasoning, and his opinions are speculative and lack a factual basis. Id.

II.     Legal Standard

"A motion *in limine* is a procedural mechanism made in advance to limit testimony or evidence in a particular area" and is "entirely within the discretion of the Court." Diamond X Ranch, LLC v. Atlantic Richfield Co., No. 3:13-cv-00570-MMD-WGC, 2018 WL 2127734, at *1 (D. Nev. May 8, 2018). A "motion *in limine* should not be used to resolve factual disputes or weigh evidence." IGT v. Alliance Gaming Corp., No. 2:04-cv-1676-RCJ-RJJ, 2008 WL 7084605, at *2 (D. Nev. Oct. 21, 2008). "To exclude evidence on a motion *in limine*, 'the evidence must be inadmissible on all potential grounds.'" Diamond X Ranch, 2018 WL 2127734, at *1 (quoting Indiana Ins. Co. v. General Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

III.    Analysis

Target argues that Smith's expert report is speculative and likely to mislead and confuse a jury. Target attacks Smith's method, the "willingness-to-pay method," as unreliable or not likely to assist a jury, pointing out that many courts have prohibited Smith from offering such testimony. Target also argues that Smith's "willingness-to-pay method" was not designed to calculate the loss of enjoyment of life and does not meet the Daubert standard. Finally, Target argues that Smith's report erroneously includes a damages calculation for McGee's husband, who is not a party to the case and cannot recover any damages.

McGee argues that while some courts have prohibited Smith from offering this kind of testimony, other courts around the country, including the District of Nevada, have permitted his testimony. McGee further argues that the findings of other courts are irrelevant to a Daubert analysis, which requires only that the methodology applied has been adopted or recognized by at least a minority of professionals in the field. Smith's inability to guarantee the numbers does not make his report inadmissible because expert knowledge "does not mean absolute certainty." (ECF #32, at 9).

The Court finds that Smith is qualified to give expert testimony. Rule 702 of the Federal

Rules of Evidence governs the admissibility of expert opinion. Expert opinion is admissible if

> "(1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient fact or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case."

City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1043 (9th Cir. 2014). A district court's inquiry into admissibility is a flexible one and the trial court is a gatekeeper, not a fact finder. Id. (citations omitted). When an expert "meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010).

Expert testimony must be relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993). The testimony is relevant "if the knowledge underlying it has a valid connection to the pertinent inquiry" and it is reliable if "the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." Primiano, 598 F.3d at 565. Judges are "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc., 738 F.3d 960, 969 (9th Cir. 2013). The trial court "has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable." Primiano, 598 F.3d at 564.

Smith's background is extensive and distinguished. He received a bachelor's degree from Cornell University and a master's degree and Ph.D., all in Economics, from the University of Chicago. (ECF #32-2, at 2). Smith has worked as an economic and financial consultant since 1974 after he completed a research internship at the Federal Reserve, Board of Governors in Washington, D.C. Id. Smith is the president of Smith Economics Group, Ltd., which provides economic and financial consulting across the country. Id. He has also served as Vice President of the National Association of Forensic Economics and on the board of editors of the Journal of Forensic Economics, a peer-reviewed journal. Id. at 2–3. Smith also wrote the first textbook on forensic economic damages used in university courses and created and taught the first forensic

economic course in the country. Id. at 3. He is a member of multiple economic organizations and has been published over 40 times. Id. at 68–72. Target does not argue that Smith's background and education are insufficient to make him an expert. Instead, it argues that Smith's methodology is speculative and should not be admitted. Having found Smith qualified, the Court moves to the methods Smith used.

While Smith is qualified, he appears to be somewhat of a controversial expert. Both parties list numerous cases from around the country in which he was either prohibited from or permitted to testify. However, having determined that Smith is qualified as an expert, the Court finds that his testimony will be helpful to a trier or fact and is admissible. The parties dispute whether Smith's specific methods have been peer reviewed. McGee argues that the "willingness-to-pay method" has been peer reviewed while Target argues that the method's specific application to a loss of enjoyment of life analysis has not been peer reviewed. The Court finds that this debate is best settled through cross-examination in front of the jury. As stated, Smith has decades of experience in economics. McGee provides evidence that there exist economists who agree with Smith's method while Target provides evidence that other economists disagree. The jury should hear these arguments and determine for themselves how much weight to give Smith's testimony.

Target also argues that the figures Smith used in his report are arbitrary and speculative. Target asserts that Smith is not qualified to determine the impairment to perform household services McGee experienced. Smith uses a 55% impairment in his calculation. Smith never claims to be qualified to make such a determination. McGee told Smith in her interview with him that she was 55% impaired to perform her duties and live her life. Smith merely used that number to make his calculation. Smith testified in his deposition that if the jury determines that 55% is not the correct number, then they can alter his numbers. Smith's goal appears to be to give the jury a model with which to determine McGee's loss of enjoyment of life, not tell them exactly what that loss was or what its dollar value equals. Such a model will be helpful to a jury. In another case when Smith's previous testimony was challenged in this district as being too speculative, the court found that because Smith "discussed his reasoning and methodology for

how and why he made these calculations in his deposition . . . defendant's arguments go to the weight not to the admissibility of the expert's testimony." Knaack v. Knight Trans., Inc., No. 3:17-cv-00172-LRH-WGC, 2019 WL 1982523, at *5 (D. Nev. May 3, 2019). The same circumstances apply here. Smith's methods may be challenged, but they are not "so flawed that they must be excluded on this motion." Id. at *6.

Nevada permits testimony on hedonic loss and agrees with jurisdictions that "permit experts, such as economists, to testify concerning the value of hedonic loss, recognizing that the jury is ultimately responsible for computing damages and that expert testimony will often assist the jury in making its determination." Banks ex rel. Banks v. Sunrise Hosp., 102 P.3d 52, 62 (Nev. 2004). Such testimony's probative value must not be "substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." Id. The hedonic damages are a "component of pain and suffering" and are not a separate and distinct damage award. Id. at 64. "[B]y including hedonic losses as a component of pain and suffering, [the Nevada Supreme Court] perceive[s] no problem of confusion or duplication of awards by the jury." Id.

The Nevada Supreme Court has permitted economists to use various methods to arrive at their conclusions on hedonic loss, including a "willingness-to-pay method" similar to the one utilized by Smith in this case. Id. at 62–63. Smith uses his "willingness-to-pay method" but uses different data and sources to arrive at his conclusions than the expert in Banks. This difference is properly addressed on cross-examination. The Court is confident that Smith's testimony is not substantially more prejudicial than probative and that it will not confuse the issues or mislead the jury. As stated previously, Smith's report merely gives the jury a framework with which to determine a damages amount. Target will have the opportunity to attack Smith's data and calculations on cross-examination, but it will be up to the jury to determine the credibility of the witness and the weight to give his report.

Finally, the Court agrees with Target that Smith's testimony regarding the damages McGee's husband suffered is inadmissible. McGee's husband is not a party to this action. Whether he suffered damages will not make a fact in consequence more or less probable. FED. R.

EVID. 401. Because it is not relevant, the Court prohibits Smith from offering testimony regarding any damages allegedly suffered by McGee's husband.

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED. R. EVID. 702. The Court finds that Smith's testimony will assist the trier of fact determine McGee's potential damages and that Smith is qualified as an expert by knowledge, skill, experience, and education.

### IV.   Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion *in Limine* to Exclude (ECF #30) is **GRANTED IN PART AND DENIED IN PART**.

IT IS FURTHER ORDERED that Defendant's First Motion to Amend/Correct Motion for Leave to File Document (ECF #37) is **GRANTED**.

IT IS FINALLY ORDERED that Defendant's Motion for Leave to File Reply to Plaintiff's Response (ECF #36) is **DENIED as moot**.

Dated this 17th day of June, 2022.

_____
Kent J. Dawson
United States District Judge

- 6 -