UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| LELA MCGEE, | | Case No. 2:20-cv-00345-KJD-DJA |
| | Plaintiff, | ORDER |
| v. | | |
| TARGET CORPORATION, | | |
| | Defendant. | |

Presently before the Court are Plaintiff's four Trial Briefs (#69/70/71/72). However, the Court interprets them to be Motions in Limine. Defendant responded in opposition (#84/85/86/87).

I.     Factual and Procedural Background

This is a negligence action arising from a slip-and-fall on March 25, 2019. The Plaintiff, Lela McGee ("McGee") visited Defendant Target Corporation's ("Target") store in Las Vegas, Nevada, where McGee tripped and fell. (#27, at 14). McGee alleges that her foot became lodged between the display end cap and a metal end cap guard that was bolted to the floor and attached to a counter displaying earphones. (#28, at 3-4). McGee alleges that she suffered injuries to her shin, ankle, neck, and back, and that Target is responsible.

McGee brings four motions in limine to exclude (1) evidence of McGee's marijuana use; (2) arguments regarding McGee's pain symptoms and Paget's disease; (3) arguments regarding McGee's economic damages and Carpel Tunnel Syndrome; and (4) arguments regarding unrelated incidents.

II.    Legal Standard

A motion *in limine* is a procedural mechanism made in advance to limit testimony or evidence in a particular area" and is "entirely within the discretion of the Court." Diamond X

Ranch, LLC v. Atlantic Richfield Co., No. 3:13-cv-00570-MMD-WGC, 2018 WL 2127734, at *1 (D. Nev. May 8, 2018). A "motion *in limine* should not be used to resolve factual disputes or weigh evidence." IGT v. Alliance Gaming Corp., No. 2:04-cv-1676-RCJ-RJJ, 2008 WL 7084605, at *2 (D. Nev. Oct. 21, 2008). "To exclude evidence on a motion in limine, 'the evidence must be inadmissible on all potential grounds.'" Diamond X Ranch, 2018 WL 2127734, at *1 (quoting Indiana Ins. Co. v. General Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." Sims, 550 F. Supp. 3d, at 912, (quoting Hawthorne Partners v. AT&T Tech., Inc., 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)).

"Irrelevant evidence is not admissible." Fed. R. Evid. ("Rule") 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 401. "The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 403.

Rule 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The Supreme Court gave expanded direction on Rule 702 in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Court held that Rule 702 imposed "a special obligation upon a trial judge to 'ensure that any and all scientific testimony… is not only relevant, but reliable.'" See Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). The Court expanded this gatekeeping obligation to all expert testimony. Id. at 147. Daubert "established that, faced with a proffer of expert scientific testimony, the trial judge, in making the initial determination whether to admit the evidence,

must determine whether the expert's testimony reflects (1) "scientific knowledge," and (2) will assist the trier of fact to understand or determine a material fact at issue." Daubert, 509 U.S. at 592. The "focus must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 596.

III.    Analysis

**A.  McGee's Marijuana Use**

McGee argues that evidence of her marijuana use for pain management is not relevant because it is not a fact of consequence in determining critical issues in this litigation. (#69, at 4). McGee was questioned during a deposition about her history of marijuana use and responded that for the last 25 years, she has smoked marijuana three or four times a week to help manage her back pain. (#84, at 3-4). McGee seeks to exclude any mention of this during trial because it "does not make it more or less likely that she was injured when she slipped and fell at Defendant's store, yet such evidence has significant potential to cause unfair prejudice and bias in the jury…." (#69, at 3).

Target argues that this testimony is relevant to "causation, injuries, and damages" and that "it will be used to impeach Plaintiff's treating physicians who did not consider the longstanding degenerative conditions and use of marijuana to mask the pain for 25 years." (#84, at 5). The Court agrees. At issue in this case is whether Target was negligent. McGee is alleging that Target's negligence caused injuries to her back. Whether or not McGee had preexisting back pain is surely relevant and probative of causation. Therefore, evidence of McGee's marijuana use will be admissible during trial and McGee's motion in limine in denied.

**B.  McGee's Pain Symptoms and Paget's Disease**

McGee argues that evidence of her back pain and symptoms being connected to Paget's disease[1] should not be admissible. (#70). McGee asserts that Target "failed to provide any expert

---

[1] Paget's disease is a bone disease that interferes with a body's normal recycling process, where new bone tissue is

- 3 -

1  opinions that Paget's disease caused Plaintiff's symptoms or injuries, and there is no relevant and
2  reasonable evidence to support such arguments." Id. at 3. Target argues that McGee
3  misunderstands the medical records and that whether or not she has Paget's disease is directly
4  relevant to the case. (#85).

5       The Court finds that mention of Paget's disease is relevant. McGee testified in a deposition
6  that she was diagnosed with Paget's disease. (#70-1, at 24). Her medical records also indicate
7  that her symptoms are consistent with someone who has Paget's disease. (#70-2, at 62-64).
8  Whether or not McGee has a degenerative bone disease goes to the issue of causation and
9  damages. Target has a right to attempt to show that McGee's injuries did not arise from the slip-
10  and-fall.

11       McGee points to Williams v. Eighth Judicial Dist. Court of Nev., 127 Nev. 518 (2011) to
12  argue that "if a defendant 'traverses the causation theory offered by the plaintiff and purports to
13  establish an independent causation theory,' the defendant must produce supporting expert
14  opinion stated to a reasonable degree of expert probability." (#70, at 6). However, that case also
15  held that "when a defense expert's testimony of alternative causation theories controverts an
16  element of the plaintiff's prima facie case where the plaintiff bears the burden of proof, the
17  testimony need not be stated to a reasonable degree of medical probability, but it must be
18  relevant and supported by competent medical research." Williams, 127 Nev., at 521. The court
19  held in Williams that "if the defense expert's testimony is used for the purpose of cross-
20  examining the plaintiff's expert or to otherwise contradict the plaintiff's causation theory by
21  comparing that theory to other plausible causes, the defense expert does not need to state each
22  additional cause to a greater-than-50-percent probability." Id. at 530. The court went on to say
23  that "because the defense expert in this instance is controverting a key element of the plaintiff's
24  prima facie case, as long as his or her alternative causation theory or theories are competent and
25  supported by relevant evidence or research, they need not be stated as being more likely than
26  not." Id.

27
28  gradually replaced by old bone tissue. If the spine is affected, nerve roots can become compressed and cause pain. See Paget's Disease of Bone, MAYO CLINIC, Paget's disease of bone - Symptoms and causes - Mayo Clinic (last visited June 2, 2023).

- 4 -

Here, Target is attempting to undermine the causation element. Any testimony produced by Target attempting to undermine the cause of McGee's alleged injuries does not need to be stated to a reasonable degree of medical probability. Because of the evidence within the depositions and medical records, the Court finds that a diagnosis of Paget's disease is relevant and supported by competent medical research.

McGee will have the opportunity in trial to attempt to poke holes in Target's witnesses and testimony regarding Paget's disease. However, excluding any mention of the disease altogether is improper and the motion is denied.

**C.  McGee's Economic Damages and Carpal Tunnel Syndrome**

McGee argues that Defendant will attempt to argue that McGee's lost wages and income is caused by carpal tunnel syndrome and not the injuries she allegedly sustained at Target. (#71, at 3). McGee argues that these arguments should be excluded from trial because Target failed to provide any expert opinions to support that idea, and that there is no relevant and reasonable evidence to support that argument. Id. Target argues that evidence of McGee's carpal tunnel syndrome is relevant and that no expert is required to testify that having pain in your hands makes working with your hands difficult. (#86, at 3, 5).

The Court finds that whether McGee has carpal tunnel syndrome that prohibits her from working is relevant to the case. That fact is probative of whether or not her loss of income and wages is caused in full or in part by her carpal tunnel symptoms or her alleged injuries resulting from Target's alleged negligence.

Dr. Rimoldi provided an expert report noting references to carpal tunnel in Plaintiff's medical records. (#71-1, at 24). McGee also testified that she had carpal tunnel symptoms from waitressing and that she believed she had been diagnosed with carpal tunnel syndrome. (#71, at 4). Because this is relevant to the causation and damages issue, it is admissible. If Target attempts to argue that her carpal tunnel syndrome is an independent theory of causation, then McGee may object. Therefore, the motion regarding argument about carpal tunnel syndrome is denied.

**D. Causation Arguments Regarding "Unrelated Incidents"**

McGee argues that Target should be prohibited from asking McGee about a prior incident regarding a ceiling falling on her head as a result of an earthquake and possibly injuring her. (#72). McGee argues that Target cannot establish that the incident caused or contributed to McGee's alleged injuries. Id. at 6. However, Target is permitted to infer about this instance and the jury is allowed to make any reasonable inferences about whether or not that caused any injury to her. As explained above, another instance of a preexisting injury is relevant and probative to key elements of McGee's negligence claim. Therefore, the motion is denied.

IV.   Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion's in Limine (#69/70/71/72) are **DENIED**.

DATED this 3rd day of June 2023.

_____
Kent J. Dawson
United States District Judge